This case involves the intersection between psychiatry and the law. To ensure that an encouraged departure and acceptance of responsibility are properly considered, strict compliance with sentencing procedures is required, especially where the diminished capacity encouraged departure ground was presented for the first time on a remand for resentencing. Help me out on something here. I'm having trouble getting to first base on one issue, the departure issue. I actually find your argument kind of persuasive that the particular way in which this guy was nuts, his paranoid schizophrenia and his bipolar disorder would explain why he was so obnoxious as far as the judge was concerned and really explain the judge's reaction. What bothers me is do we have any jurisdiction over the judge's refusal to depart? Absolutely, your honor. The court has absolute discretion, absolute power to review a misapplication of the guidelines and a factual error that underlies a decision. I don't know about that. As I understand the law, if a district judge understands that he has discretionary authority to depart and he doesn't, we're just out of the picture. We don't get back into it by saying, well, he made some legal error or something like that. Your honor, that goes back to Kuhn, to Cantu, to Walter, all cases that are cited in the briefing, in which in each of those cases, in one way or another, the district court misunderstood the basis for the departure. I think Kuhn was where the district judge says, I am not permitted to depart for this reason. And it turns out he is. So the case gets remanded for him to decide whether to. I think in Sanchez-Rodriguez, where the court adopted the Kuhn standard as far as taking it, if there's a legal error, and I think this goes all the way back to Morales. It's not any legal error. It's just a legal error that causes the judge not to recognize that he has authority to depart. I think the standard would be correctly stated as that a district court's refusal to depart downward based upon an erroneous interpretation of law may be reviewable on appeal. Now, the reason for that, I think, is simple, and that is that under 3741, the basic appeal statute says that you can review a case where there is a misapplication of a guideline. Here we have a guideline that says... My problem with reading it that broadly is that if you're a district judge, you know very well that if you recognize your authority to depart, it's an unreviewable exercise of discretion. So there's just not the call upon the district judge to articulate his legal analysis with the same care as in a reviewable area. Your Honor, I think that the obligation is just as strong to assure that there has been a correct application. For example, if the court were making a decision based on believing that unless I prove beyond a reasonable doubt that there's diminished capacity, that that's a legal error in the application of the guideline on an encouraged basis for departure, that is surely reviewable by this court. Mr. Sadie, I'm having trouble following you. It's my problem, not yours. What's the legal error that you say the judge made here? There are at least five legal errors. First one is that there is a three-prong test that is used in determining whether the diminished capacity guideline applies. We presented all three of them in our sentencing letter. And you made that argument to the trial judge? We argued at pages 20 and 21. You'll make this argument to the trial judge, there's a three-prong test? Yes, Your Honor. Okay, so he knew that there was a three-prong test. And he only ruled on it based – he only ruled repeatedly on the one prong of it. Therefore, his – How do we know he ruled repeatedly on one prong of it? Because he kept on saying that he understood what he was doing, he understood what he was doing, he understood what he was doing, when, in fact, the question that was brought forward in the sentencing letter and through the expert was that he had impaired capacity to control, impaired capacity to reason. Both of those two – Didn't the judge also say, I don't find any connection at all between his criminal behavior and his mental problems? Did the judge say that? He said in the – if he made such a finding – Did he say that? It was a confusing – Did he say that? He said that he – yes, he found that there was a – Okay, he said it. He said, I find no connection. And this is after you made all your arguments. And that would get us to Walter, which says that if there's an erroneous finding of fact – How can it be an erroneous finding of fact? Because the – But his – he said, look, I've looked at this thing. It's not a question of minimal or minor or material or something. I don't find any connection. Zero. That's what he said. Now, you say that's erroneous on this factual basis. Yes. On the legal question of whether he made a mistake, what are the other legal mistakes that you say he made? When he was explaining why he was exercising discretion not to depart at the same time as finding no connection, he said, the reason I find no connection is because I observed this man in court while he was on trial, and I interpret the interrelationship between him and his lawyer during the trial as showing that he is an arrogant, manipulative person who is just a bad person, and I'm not going to give him any breaks because of that. How do we know that's wrong? Because of the Getters case. The Supreme Court said that there's a constitutional right to consult with counsel during trial. First of all, we don't have any record at all of what happened. We have no way of the court reviewing facts. Well, it wasn't just a consultation. He said that the defendant was constantly interrupting his lawyer by saying things to his lawyer, passing notes to his lawyer, that also the defendant was smirking at witnesses and expressing himself with regard to what he thought of testimony. And the problem that I have with that is not with the constitutional right to communicate with his lawyer. It's with whether the judge recognized that this kind of obnoxious behavior in the courtroom had some connection to being a paranoid schizophrenic with bipolar disorder. Dr. Feaster said he was grandiose. I think it's the classic manifestations of grandiosity. Here's a guy who's criminal history category one, a relatively – His brother's schizophrenic, too, as I recall. That's correct. Looks like it's just got the disease. And I think that the disease, instead of being used as a lenity, which is required under CANT 2, it's used as an aggravating factor, which is just wrong. And that's why this case should go back to resentencing. Also on the – Am I correct that even though you let off with the failure to depart, you actually don't need that? Because if you get the sentence vacated on one of the adjustments, our ordinary treatment of it is to vacate the sentence and remand for resentencing. That is true under Matthews, Your Honor. Because the court would be wide open. Yes. And we wouldn't even have to reach it. Yes. What did you mean when you told the court after making all your legal arguments, I understand the court understands the legal grounds? That the – that I was going into the discretion to do the split sentence. The court had not addressed the split sentence question, which isn't a legal question, but is segueing into the request for a split sentence, which was also denied. The other ground for – What you were talking about there was the diminished capacity. Let me move over to something else that's bothering me here. It's probably evident to you from my questions that if I were the district judge, I'd be pretty sympathetic to your argument that it's the guy's mental disease that's making him so irritating in court, characteristic of psychotics to be unpleasant to be around. However, the district judge didn't buy it, and I'm not the district judge. And I'm wondering why we don't have to just defer. The district judge could read these reports. He could make his own judgment, and he did. And why we don't just have to defer to his judgment. Your Honor, this is because there is a combination of both legal and factual errors that do allow the court to review. We are not helpless to have any district court judges say, because I utter the magic word discretion, there is no review. If the legal standard isn't followed, if there's constitutional error, if there is factual error, all those things are provided for direct appeal. We are not saying remand this and order him to depart. If that were true, then I would be out of court because I'd be challenging the exercise of the discretion. That is not what I'm doing. I'm not asking this court to grant a departure or say that a departure has to be ordered, simply that it has to be resentenced with the correct standards. During this whole episode up to the time that he was sentenced, was there any evidence whatsoever that this defendant was suffered severely from schizophrenia and bipolar affective disorder? Yes, Your Honor. There was evidence that he wasn't? I'm sorry. Was there any evidence that he did not suffer from schizophrenia and bipolar? Not a bit. It was conceded by the government. There was not one single doctor testify that he was completely sane? That is correct. There was no layman who ever testified that he was completely insane? That is correct. The trial judge merely by his observation thought that he was totally insane? He made the observation that based on... Is that right or not? He based... Nothing else except his observation of the defendant in court? As far as I can tell, yes, sir. All right. Can you determine the mental capacity of a person by looking at it? I believe not. And I also believe that the intelligence of a person is not necessarily at all correlated to the existence of mental illness or not. And we've also argued that to the court in our... Your time is expired. Thank you, Mr. Secretary. Hey, please support. I'm Kathleen Vickers. I'm the assistant United States attorney for the government today. I've handled this case as the prosecutor from... This is about the strangest case I think we'll ever have. Does the government, when it hires people, run a background check on them? Your Honor... Yes or no? Yes. They do? They do. They run a background check on this fellow? Yes. And they found out that he didn't have all these problems? There are certain things that they can't ask. What's that? There are certain things that they can't ask and they don't generally delve into when they're hiring a Social Security employee whether they have a mental illness. I don't even think that would be appropriate, Your Honor. Did they find out that he was getting a disability pension from the same government that wanted to hire him? No. They did not find that out until later. Why didn't they find that out? Because there are two components. This was all dealt with at trial and the jury found him guilty, and here's the reason why, Your Honor. There's two components to Social Security that are involved here. One, the hiring of employees. Two, a very confidential component concerning benefits paid to employees. So those two can't share information. So that's how they didn't know, and it would be inappropriate for them in an employment interview to ask, are you mentally ill? Is there a legal prohibition from the two sharing information? Yes, there is. And where do we find that? At trial it was discussed on the record. That prohibition is included in a portion of the Code of Federal Regulations. So the CFRs have that. Right, and that was all factually dealt with at trial. We had Social Security employees in to testify to that, and the defense did not contest that. Your Honor, there are two arguments here for diminished capacity and acceptance, and both the defense, they can't get off first base. And the first one you've already discussed. Here Judge Marsh explicitly acknowledged that he had discretion to depart for diminished capacity, and he elected not to. And he cited some grounds for the reasons why he elected not to. Let's get over to the adjustments. Acceptance. On the adjustments, there we do have authority to review. We do have jurisdiction. You do. And I, you know, abuse of discretion review is not the same thing as no review. It doesn't mean never, it just means hardly ever. Maybe not even hardly ever, just we won't substitute ourselves for the district judge. I read this record, and it's undisputed that he's a paranoid schizophrenic. It's undisputed he has auditory hallucinations. That is, he hears voices that aren't there telling him all these stupid things. It's undisputed that he has bipolar disorder, manic-depressive. It's also undisputed he's a very bright fellow, so when he's not too disabled by his craziness, he's actually a useful worker because he's bright. It's also undisputed he has hypothyroid disease on account of the drugs to treat his paranoid schizophrenia. Hypothyroid disease causes its own mental disorders. With all these things, I just, if I have jurisdiction to review, it's just hard for me to see how I can say the district judge could correctly find no connection between the way he behaved in court and his mental disorders. Well, you didn't have the benefit that Judge Marsh did. I mean, I've known people with these mental disorders. They're unpleasant. Setting aside what you've known outside of this courtroom and what you, and putting in front of you what you know and the facts of this record. But it's all in the record, all this craziness. Right, but let me explain. Judge Marsh has the entire trial in front of him and the entire record and the entire history of Mr. Schneider. Mr. Schneider, there was no evidence that he was hearing voices other than a self-report in 1997 to Dr. Innes. No, no, that's not true. A self-report to a psychiatrist is received with skepticism and rejection or acceptance by a psychiatrist depending on its consistency with all sorts of other diagnostic criteria. Including information that they've factually given him about their life. Well, one thing that tells a whole lot about this fellow, paranoid schizophrenia is genetic. And the fact that this fellow's brother is a paranoid schizophrenic is very indicative. Judge, I'm not disputing that he has a mental illness, but let me tell you whether or not it was controlled with medication, whether or not this man was a very good employee for Social Security and IRS, whether he received numerous promotions, whether he did very, very well under his medication. He was smart. And whether he gave Dr. Innes incorrect information. There's no inconsistency. My wife had a schizophrenic who worked for her doing statistics. He was really smart. He did good work on statistics. The government's not disputing that. But with the Dr. Innes report, which is the only evidence we have here that his mental illness was interfering with his ability to behave relatively normally in the workplace, well, very normally in the workplace. To Dr. Innes, this man, he'd been employed almost two years by the government. He told Dr. Innes, I can't work, I can't maintain a job for more than a year, for a year. He said, I'm basically on a list to be fired. He gave Dr. Innes all this inaccurate information, this deception. And Dr. Innes included it. Because he was working, and he continued to work from 1997 to 2018. No, that's a false inference. One inference is, you know it's a false statement. As for whether it's deception, one inference is that the false statement results from an intent to deceive. Another is that it results from being crazy and having crazy thoughts in his head. That's why you leave these determinations to a trial judge, who's able to hear all of the evidence rather than what we're able to discuss in ten minutes. Hear all the evidence about what he's done, what he's said, what kind of mental illness he does suffer from, and make a call. Is discretion, is it appropriate to exercise discretion at this point to depart? Did this mental illness affect this man's ability to work for many, many years for the government? Even when he was telling a psychiatrist back in 1997, he couldn't hold a job for longer than a year. Everyone who testified that had contact with him, and I'm not saying that mental illness can't be hidden and that sort of thing, but it doesn't mean that every mentally ill person doesn't have the ability to control their behavior. The really crazy ones do their best. It's not until you get into talking to them about the FBI and stuff that you find out. Otherwise, you have a blank check if you do have that type of disorder to commit crime and to say later on, listen, I couldn't control it. I was not responsible for my actions. And so you look at the total picture for a mentally ill defendant just as you would for any other defendant, Your Honor. So counsel has not been able to cite you one case at a district court when the district court acknowledged discretion, and that includes McBroom. In fact, there's a footnote in McBroom at page 543. If the court had acknowledged discretion in that context, we would have no jurisdiction to review this case on appeal. Counsel for the defense has been unable to cite you a case where, as Judge Marsh did here, the court acknowledged discretion to depart, but said, based upon what I find, I find that he understood what he was doing, that he was manipulative during trial, that he had full control. That does discuss all the prongs of the departure process. Are there any issues here that are not departures but mere adjustments? Yes, acceptance, Your Honor. And the hat that counsel hangs his hat on is that he's saying that contrition is no longer a grounds for deciding whether or not somebody's accepted responsibility. I thought that what the judge said was that he would not give credit for acceptance of responsibility because the man's behavior and what he said did not show contriteness. Right. And contrition is actually, despite counsel's assertions, it has been since Vance when, on page 1158, the court cited a person who cooperates who may be cunning but not contrite in buying their way out of prison. I wrote Vance, and what it basically says is you plead out, you get the two points. Right, because in Vance he planned, he accepted responsibility, he admitted to all the elements, but Cortez later on says that that's not a per se bar just going to trial. But Vance does have a discussion about, well, it must have been only contrition that the judge looked at in Vance. It doesn't say contrition is not still viable. It just says the court had a strained interpretation of contrition. The problem in Vance, as I recall the case, was the judge thought, well, yeah, he pled out, but he's not admitting anything more than a crime. He's not willing to be a snitch. He doesn't seem really contrite to me. Right. And what we wrote in our decision was it doesn't matter. He pled out, he gets the two points. Right. But you didn't say that contrition is no longer a proper consideration for acceptance. And, in fact, there have been multiple cases since you wrote Vance, including Flores in which the court on page 90 said, we think the district court was wrong. We think the defendant was sufficiently contrite. Ochoa Gaten on page 843, he hasn't manifested sincere contriteness. Gallant, 1998, implicit in acceptance is an admission of moral wrongdoing satisfied by the expression of contrition or remorse. Contrition was just one factor. How can we sustain the judge's determination that the defendant did not accept responsibility if the judge misapprehended the defendant's mental ability to accept responsibility on account of his psychosis? You know, in the transcript, it's clear the judge said, it's in the excerpt of record on page 353 and 354, I know Mr. Schneider's mentally ill, but I don't think it played a part in his inability to accept responsibility. Keep in mind, the record before the court included many instances in which the defendant actually very logically came up with a number of defenses to why he was doing what he was doing. That's just mixing up being smart with being crazy. No, it's also kind of – You can be – being psychotic is not the same thing as being retarded. But it's not crazy like a fox that we're talking here. If you're cunning, if you're cunning and you are an insider in Social Security and your girlfriend is also a claims representative and you know the rules and you try to manipulate them because you know they're not going to catch you for a while, and when they do, they're probably just going to assess you with an overpayment, that doesn't mean you're – that doesn't mean you're mental illness, which Judge Marsh acknowledged. In a very measured and deliberate way, this record displays that he really took this into account. He wasn't just shooting from the hip when he said, I don't buy this mental illness business about acceptance. He took the whole picture. It wasn't just lack of contrition, Your Honor. It was whether or not the defendant had throughout the proceedings in his multiple opportunities to gain acceptance, which should only be granted in rare instances after a trial, whether he pre-trialed, during trial, if there are two sentencings, whether he could say, you know, I actually did this. It wasn't a mistake by the government to pay me. I actually committed a criminal offense here. He could not say that, and that was the problem that Judge Marsh had. And it won't be just mentally ill defendants you'll see in the Ninth Circuit. Many defendants sit there and smirk during trial. Many defendants don't understand that a trial is a fishbowl, and everybody's watching everything. And the judge, who's the trial judge, has the ability to sit there and see exactly what is going on, and that's why the appellate court has given the trial judges great deference to make these type of judgment calls. Otherwise, we wouldn't have a district court judge who could make an acceptance call. And just because this defendant is mentally ill, that's a factor we need to consider, and the judge certainly considered here. But it doesn't mean that the judge cannot still rely on his own observations. This is a very interesting case, as Judge Kleinfeld well explains. It's loaded with information suggesting that this man has some serious problems. You'll take a look at the reports, and that just jumps off the page at you. On the other hand, you have a situation where, as the judge says, at one point, I've been on the bench for 49 years, and I've never seen anything like this. And then the judge goes down the line and says, based on what I have seen in this courtroom and my dealings with this defendant, I conclude that Dr. Feaster saw a different personality. And the judge concludes from that that the man is playing games and trying to manipulate the system. The difficulty that I have is, how do we review something like a judge saying, I've watched the guy during trial, and his behavior is utterly inconsistent with the expert reports? How do we review that? He doesn't just say that. He says that as one example. He also cites the fact that he worked for Social Security. He explains that he carries over what he said in the first sentencing, that this trial, in the record, you know that he worked, and I've cited it in my brief many times, he worked for Social Security for many years. He filled out documents in response to their request for more information. In none of those instances, when he showed up for work or when he responded to requests for more information to get this benefit issue resolved, did he ever display any indication of mental illness to anyone. So it wasn't just this isolated context of trial. The judge cited that as an additional example, but he also had the full record. I mean, if you were trying to argue that he was faking mental illness, then I could see where that argument would be apropos, but I don't get what it has to do with the case at all. Well, if you're trying to figure out whether somebody during the period of the offense conduct knew what they were doing, you look to people who had contact with them. Yeah, but for what? This is a smart fellow. He's all but dissertation for his doctorate. He also has had his disease controlled with medication for many years. He's had so much medication that it's caused another disease, hypothyroidism. It's also characteristic of psychotics, as one of the reports says, that they often try to cover it up. So his working successfully and not manifesting his nuts just as obnoxious to the judge is consistent, not counter to. On that point, you have used your time. Thank you, Your Honor. I'll call Mr. Saini back to the stand to respond. Thank you, Your Honor. I'd just like to make three quick points. One is that the government can't have it both ways. Either he exercised his discretion because he found a connection. If you don't have a connection, you can't exercise your discretion. So they can't have it both ways. It's reviewable either way. Under Walter, on page 37 of our brief, a very similar type of situation where the court failed to adequately give adequate attention to the psychiatric opinion that was supplied, that that resulted in a reversal on the failure to depart under 5K2.13 and a remand. We're not asking for the relief of departure. And lastly, on the Vance case, what I found useful and very important in the case of mentally ill clients is the instruction not to be looking into the soul of the person's sentence. But that is really what we're talking about because we're not really equipped to do that. We can't determine whether the person has said, yes, I did those acts, and those acts were necessary to constitute the crime. But we cannot go into that further inquiry which the judge articulated as, is this person truly contrite? That type of thing, if the person we see. I can see where you find it useful because what we were concerned with is some defendants are socially skilled enough to make the judge think that they feel very sorry for what they did as opposed to sorry for being caught. And other judges are lacking in social skill, but they accept responsibility coolly and with no apparent show of emotion. And this is the obverse where you have somebody who has a difficulty, doesn't have the sophistication, and is, as a matter of fact, impaired in his ability to communicate what a judge expects to hear. Thank you, counsel. Thank you. The case just argued is ordered and submitted. Gorham versus Thompson.
judges: Ferguson, Trott, Kleinfeld